IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

JAMES D. SCHAEFFER             PLAINTIFF

V.            CIVIL ACTION NO. 3:19-cv-213 HTW-LRA

WARREN COUNTY, MISSISSIPPI

                     DEFENDANT

## COMPLAINT
## JURY TRIAL DEMANDED

  **COMES NOW** the Plaintiff, James D. Schaeffer, by and through counsel, Watson & Norris, PLLC, and files this action to recover damages for violations of his rights under the Fair Labor Standards Act. In support of this cause, the Plaintiff would show unto the Court the following facts to-wit:

### THE PARTIES

  1.  Plaintiff, James D. Schaeffer is an adult male who resides in Warren County at 1015 South Street, Vicksburg, MS 39180.

  2.  Defendant, Warren County, Mississippi is a political subdivision and may be served with process through Richard George, President, Warren County Board of Supervisors, 913 Jackson Street, Vicksburg, MS 39183.

### JURISDICTION AND VENUE

  3.  This Court has federal question jurisdiction and venue is proper in this court.

  4.  Plaintiff timely files this cause of action within the appropriate statute of limitations for claims arising under the FLSA.

### STATEMENT OF THE FACTS

  5.  Defendant hired Plaintiff on September 6, 2006 as a boat pilot.

6. Plaintiff complained to William "Buddy" Poole, Road Manager, in October 2013 about being denied overtime hours and pay, which made Mr. Poole very angry with Plaintiff.

7. Mr. Poole refused the pay the overtime wages, and his face turned red when Mr. Schaeffer asked for the overtime wages.

8. On November 6, 2013, Mr. Schaeffer submitted two leave request forms that requested vacation leave on December 1-2, 2013 and for forty-two (42) hours of leave the last week of December 2013. The second leave request was for a hunting trip.

9. For seven (7) straight years Mr. Schaeffer had requested and been granted leave by Appellee to go on this same hunting trip every year.

10. On November 13, 2013, Earl Carson, who was Mr. Schaeffer's supervisor, informed Mr. Schaeffer that his leave requests had been denied.

11. Other than submitting a formal leave request, an employee for Appellee can also work arrangements with other employees to work the employee's shift.

12. So even though the formal leave request was denied, Mr. Schaeffer had the option of arranging other employees to work for him with the approval of his immediate supervisor, Earl Carson.

13. When the leave request was denied, Mr. Schaeffer began trying to work out arrangements for other employees to work his shifts on December 1 and 2, 2013.

14. Mr. Schaeffer informed Mr. Carson that David Brewer had agreed to work for Mr. Schaeffer on December 1, 2013, and Mr. Carson informed Mr. Schaeffer that Matthew Sanderson was going to work for Mr. Schaeffer on December 2, 2013.

15. Mr. Schaeffer left his conversation with Mr. Carson with the understanding that Mr. Carson had approved the arrangement for other employees to work for him on

December 1 and 2, 2013, so he could take off. Mr. Schaeffer also kept his cell phone with him just in case something happened, and the Appellee needed to contact him.

16. On December 1, 2013, Mr. Brewer did not show up to work Mr. Schaeffer's shift.

17. Both Earl Carson and Buddy Poole testified there was no such agreement, and that they had no idea why Mr. Schaeffer did not appear for work on December 1, 2013.

18. However, at no point did anyone with Defendant ever call Mr. Schaeffer to see why he was not at work, even though it was undisputed by all parties that it was very important that the ferry run so hunters can get on and off the island.

19. On December 2, 2013, Mr. Sanderson did not work for Mr. Schaeffer and again no employee for Defendant even attempted to call Mr. Schaeffer to get him to come run the ferry that was very important to Defendant.

20. Mr. Poole even admitted that the reason he did not call Mr. Schaeffer was because he knew if Mr. Schaeffer missed two days in a row, he could have Mr. Schaeffer terminated.

21. On December 3, 2013, Mr. Schaeffer returned to work with the impression that everything was fine. Within five (5) minutes of his return to work Mr. Carson called Mr. Schaeffer to tell him he is on his way to talk about a generator.

22. Mr. Carson arrived a few minutes later, and he and Mr. Schaeffer had a friendly discussion about their Thanksgiving holidays and the generator.

23. At no point during this conversation was there any mention of Mr. Schaeffer allegedly missing two (2) days without leave.

24. After Mr. Schaeffer ran several ferry trips across the river, Mr. Poole arrived at the work site with Mr. Carson. Mr. Poole then informed Mr. Schaeffer that he was terminated because he "quit his job."

25. Mr. Schaeffer then responded that he did not quit, and that he had approval to take December 1 and 2 off. Mr. Poole refused to change his decision.

26. On that same day, Mr. Poole submitted a formal request to the board of supervisors recommending Mr. Schaeffer's termination based on allegedly quitting without notice.

27. On December 16, 2016, the board of supervisors held a hearing where they voted to terminate Mr. Schaeffer after Mr. Poole falsely claimed that Mr. Schaeffer had quit.

28. Prior to the hearing, Mr. Schaeffer asked Chase Childers, who is a laborer for Defendant, to testify to confirm the agreement for Brewer to work for him. Mr. Childers was later prevented from corroborating Mr. Schaeffer's arrangement when Mr. Carson, who was his supervisor, instructed Mr. Childers to not appear at the hearing.

29. On November 21, 2014, Mr. Schaeffer filed his complaint for retaliation under the Fair Labor Standards Act.

30. On January 17 and 18, 2017, the trial court held a jury trial, which resulted in a unanimous verdict in Mr. Schaeffer's favor finding that Defendant had retaliated against Mr. Schaeffer.

31. On June 1, 2017, the trial court denied Defendant's motion for judgment as a matter of law as to liability. On December 7, 2018, the Fifth Circuit Court of Appeals affirmed this decision.

32. On November 14, 2017, the trial court held an evidentiary hearing to determine if Mr. Schaeffer should be reinstated.

33. During the hearing the Defendant called Mr. Carson and Richard George, who was the Defendant's board president.

34. Mr. George testified that the board had so much animus against Mr. Schaeffer that if the trial court entered an order requiring Defendant to rehire Mr. Schaeffer that the board of supervisor for Defendant would vote to shut down the ferry so Mr. Schaeffer's position would be eliminated.

35. Mr. Schaeffer's U.S. Coast Guard marine officer license was scheduled to expire on February 13, 2018.

36. To renew this license Mr. Schaeffer was required to get his prior employers to confirm to the U.S. Coast Guard how many years and months he had piloted a boat for each employer.

37. Approximately six months prior to the expiration of the license Mr. Schaeffer went Defendant's county barn, courthouse and administrative to see who he needed to speak to get the confirmation to the U.S. Coast Guard. After talking to numerous employees Mr. Schaeffer was directed to get the information from the Defendant's administrator.

38. When Mr. Schaeffer went to the Defendant's administrator and Mr. Carson to get the needed confirmation, neither would even speak with him.

39. On February 7, 2018, Mr. Schaeffer's counsel sent Defendant's attorney an e-mail requesting that Defendant please confirm the relevant information to the U.S. Coast Guard so Mr. Schaeffer could renew his license.

40. The only response from Defendant's attorney was that he did not get a positive response from Defendant.

41. On February 13, 2018, Mr. Schaeffer's license expired solely because Defendant refused to confirm the years and months that he piloted a boat for Defendant.

42. When Mr. Schaeffer's license expired, he was required to take a physical exam as well as a written test to get it renewed, which costs Mr. Schaeffer for having to pay for the written test and physical exam. Had Defendant provided the requested information to the U.S. Coast Guard Mr. Schaeffer would not have been required to take either exam to get his license renewed.

43. Mr. Schaeffer passed both exams and his license was renewed.

44. Alton Miller, who was a boat pilot for Defendant, was terminated on February 9, 2018, for failing a drug test.

45. Defendant advertised the boat pilot position in the Vicksburg Post.

46. Plaintiff applied for the position on February 12, 2018.

47. Plaintiff was not interviewed for the position.

48. Defendant hired Robert Brewer on February 23, 2018, as a contract pilot.

## COUNT I: RETALIATION

49. Plaintiff re-alleges and incorporates all averments set forth in paragraphs 1 through 48 above as if fully incorporated herein.

50. Plaintiff was retaliated against by causing his boat pilot license to be lapse and by not hiring him in 2018.

51. Plaintiff has been harmed as a result of this retaliation, and the Defendant is liable to Plaintiff for the same under the terms and conditions of the Fair Labor Standards Act.

## PRAYER FOR RELIEF

**WHEREFORE PREMISES CONSIDERED**, Plaintiff respectfully prays that upon hearing of this matter by a jury, the Plaintiff be granted the following relief in an amount to be determined by the jury:

1. Back pay or reinstatement; or
2. Future wages in lieu of reinstatement;
3. Compensatory damages;
4. Liquidated damages;
5. Attorney fees;
6. Costs and expenses; and
7. Such other relief as is deemed just and proper.

THIS the 29th day of March 2019.

Respectfully submitted,

JAMES D. SCHAEFFER, PLAINTIFF

By: _____
Louis H. Watson, Jr. (MB# 9053)
Nick Norris (MB#101574)
Attorneys for Plaintiff

OF COUNSEL:

WATSON & NORRIS, PLLC
1880 Lakeland Drive, Suite G
Jackson, Mississippi 39216-4972
Telephone: (601) 968-0000
Facsimile: (601) 968-0010
Email: louis@watsonnorris.com
nick@watsonnorris.com